E-FILED
Thursday, 17 October, 2019  01:35:48 PM
Clerk, U.S. District Court, ILCD

5442-284
BMS/tlp/slc

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NANCY C. PETTIGREW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-02087 |
| | ) | |
| THE BOARD OF TRUSTEES OF THE | ) | |
| UNIVERSITY OF ILLINOIS as a Board and as | ) | |
| each individual Trustee; and MICHAEL | ) | |
| JAMISON, individually and in his official | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | | |

### ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT

NOW COME the Defendants, THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS and MICHAEL JAMISON, by Brian M. Smith of Heyl, Royster, Voelker & Allen, their attorneys, and for their Answer to the Second Amended Complaint of the Plaintiff, NANCY C. PETTIGREW, state as follows:

### STATUTES, JURISDICTION, AND VENUE

1.      This action arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, 42 U.S.C. § 1983, the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and the Illinois Civil Rights Act of 2003 ("ICRA"). 740 ILCS 23/5.

**ANSWER:      Defendants admit jurisdiction; Defendants deny the remaining allegations of Paragraph 1.**

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 for claims that arise under the Constitution, laws, and treaties of the United States, and 28 U.S.C. § 1367 for claims that arise under the ICRA.

**ANSWER:    Defendants admit this Court has jurisdiction over Plaintiff's Second Amended Complaint.**

## VENUE

3.      Pettigrew is a citizen of the United States of America currently residing in Champaign County, Illinois.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 3, and therefore, deny the same.**

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e as a substantial part of the events, actions, and omissions giving rise to this claim occurred within the Central District of Illinois, specifically, Champaign County, Illinois and the Board's principal place of business is located within the Central District of Illinois at 506 S. Wright St. Urbana, IL 61801, and all other Defendants, were at all times relevant, employees/agents of the Board.

**ANSWER:    Defendants admit that venue is proper. Defendants admit that the Board's principal place of business is located within the Central District of Illinois, and that all other Defendants were at all time relevant employees of the Board. Defendants deny the remaining allegations of Paragraph 4.**

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Pettigrew has exhausted her administrative remedies as required by Title VII by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

**ANSWER:    Defendants admit that Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission.**

6.      Pettigrew was issued a right to sue letter from the EEOC on March 13, 2019

**ANSWER:      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 6, and therefore, deny the same.**

## FACTS COMMON TO ALL COUNTS

7.      Pettigrew was an employee of the Board from 2006 through her termination on November 3, 2017.

**ANSWER:      Defendants admit the allegations of Paragraph 7.**

8.      Pettigrew is an African-American female.

**ANSWER:      Defendants admit the allegations of Paragraph 8.**

9.      On information and belief, Jamison, as well as all of Pettigrew's direct supervisors, are Caucasian.

**ANSWER:      Defendants admit that Michael Jamison is Caucasian. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 9, and therefore, deny the same.**

10.      Pettigrew was a Building Services Worker ("BSW"), employed by the Board, and supervised by Jamison when she was terminated.

**ANSWER:      Defendants admit the allegations of Paragraph 10.**

11.      Pettigrew began experiencing racial and sex discrimination by Board employees as far back as 2007.

**ANSWER:      Defendants deny the allegations of Paragraph 11.**

12.      One day, Pettigrew came to work with her hair wrapped in a scarf and a Board employee referred to her as "Aunt Jemima."

**ANSWER:      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 12, and therefore, deny the same.**

13.     On information and belief, the Board employee was Dave Messeman.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 13, and therefore, deny the same.**

14.     The comment was made likening Pettigrew's appearance as an African-American woman to that of the Aunt Jemima logo, which itself is a hurtful reference to Southern plantation "mammies" who were submissive servants forced to care for their white master's children at the expense of their own families.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 14, and therefore, deny the same.**

15.     Pettigrew complained to her supervisor, Steve York, about the racist and sexist connotation of the comment, but no action was taken against the Board employee.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 15, and therefore, deny the same.**

16.     Thereafter, caricatures of the offensive Aunt Jemima logo were taped to the walls of the building where Pettigrew worked, in areas that Pettigrew had to traverse for her job duties.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 16, and therefore, deny the same.**

17.     On another occasion, Pettigrew came to work with her hair in a ponytail and a Board employee asked Pettigrew how long she had to hang from a tree to get her ponytail that long.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 17, and therefore, deny the same.**

18.     The comment was made due to Pettigrew's appearance as an African-American woman referencing the hurtful past practice of lynching African-Americans by hanging them from trees.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 18, and therefore, deny the same.**

19.     The comment was made in front of Pettigrew's supervisor, Jamison, and neither he, nor the Board, took any action against the employee who made the comment.

**ANSWER:     Defendants deny the allegations of Paragraph 19.**

20.     On numerous occasions, Pettigrew was confronted with the word "nigger" written on the walls of employee-only buildings, as well as Confederate flags and nooses on Board employee vehicles and on campus.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 20, and therefore, deny the same.**

21.     On information and belief, the Board took no action to remedy the racially hurtful statements.

**ANSWER:     Defendants deny the Board failed to take appropriate action.**

22.     Board employees have referred to Pettigrew as "chocolate gal" with no admonishment or punishment by their supervisors or the Board.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 22, and therefore, deny the same.**

23.     Jamison referred to Pettigrew and other females as "dumb bitches."

**ANSWER:     Defendants deny the allegations of Paragraph 23.**

24.     Pettigrew reported Jamison's comments to the Board, but no action was taken against Jamison.

**ANSWER:     Defendants admit that Plaintiff reported comments attributed to Jamison to an employee of the Board, but denies that no action was taken against Jamison.**

25.     Pettigrew contacted the Office of Access and Equity ("ODEA") about the racial and sex discrimination she and others were experiencing.

**ANSWER:     On information and belief, Defendants deny the allegations of Paragraph 25.**

26.     ODEA never contacted Pettigrew and, on information and belief, never investigated the complaints.

**ANSWER:     On information and belief, Defendants deny the allegations of Paragraph 26.**

26.     After reporting Jamison's comments, Pettigrew began to receive additional discipline and admonishment from Jamison and other Board employees which was not directed to Caucasian employees.

**ANSWER:     Defendants deny the allegations of Paragraph 26.**

27.     On or about September 30 through October 2, 2017, a Board employee falsely accused Pettigrew of bringing a gun to work.

**ANSWER:     Defendants deny the allegations of Paragraph 27.**

28.     Pettigrew's person, purse, locker, and car were searched, without a warrant, and no gun was found.

**ANSWER:     Defendants admit the allegations of Paragraph 28.**

29.     Based upon the fact that the complaint against Pettigrew was unsubstantiated, and Pettigrew fully cooperated with the warrantless government search, Pettigrew was allowed to return to work; however, no disciplinary measures were taken against Pettigrew's accuser.

**ANSWER:     Defendants deny the allegations of Paragraph 14 as alleged.**

30.     On information and belief, Pettigrew's accuser was Caucasian.

**ANSWER:     On information and belief, Defendants deny the allegations of Paragraph 30.**

31.     Pettigrew, who is deeply religious, maintained a number of religious items in a personalized space in the break room since 2006.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 31, and therefore, deny the same.**

32.     On or about October 3, 2017, a Board employee observed a prayer in Pettigrew's personalized space based upon Pettigrew's reading of Psalm 91.

**ANSWER:     Defendants deny the allegations of Paragraph 32.**

33.     The Board used the prayer as a reason to terminate Pettigrew, classifying the prayer as "threatening."

**ANSWER:     Defendants deny the allegations of Paragraph 33.**

34.     Prior to termination, Pettigrew was placed on leave.

**ANSWER:     Defendants admit the allegations of Paragraph 34.**

35.     Pettigrew was given no reason for her leave when she was sent home.

**ANSWER:     Defendants deny the allegations of Paragraph 35.**

35.     After being placed on leave, and despite the Board's revisionist classification of the prayer as threatening, the Board left the prayer posted in Pettigrew's personalized space.

**ANSWER:     Defendants deny the allegations of Paragraph 35.**

**COUNT I-UNLAWFUL EMPLOYMENT PRACTICES (HOSTILE WORK
ENVIRONMENT, RETALIATION, AND DISPARATE TREATMENT) ON THE BASIS
OF SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
Against The Board of Trustees of the University of Illinois**

36.    Pettigrew re-alleges paragraphs 1-35 of this Complaint as if fully set forth herein.

**ANSWER:    Defendant repeats and reasserts its answers to Paragraphs 1 through 35 of
Plaintiff's Second Amended Complaint as and for its answers to Paragraph 36.**

37.    The Board is an employer as defined by Title VII.

**ANSWER:    Defendant admits the allegations of Paragraph 37.**

38.    Title VII bars employers from engaging in certain employment practices such as

discharging or otherwise discriminating against any individual with respect to her compensation,

terms, conditions, or privileges of her employment because of such individual's sex or to limit,

segregate, or classify employees in any way which deprive or tend to deprive any individual of

employment opportunities or otherwise adversely affect her status as an employee because of

such individual's sex.

**ANSWER:    Paragraph 38 is a legal conclusion, and Defendant allows the language of
Title VII to speak for itself.**

39.    The Board, and by its agents and employees, subjected Pettigrew to multiple

unlawful employment practices, including but not limited to: termination, disciplinary

proceedings, administrative leave, changes in privileges of employment, and a hostile work

environment.

**ANSWER:    Defendant denies the allegations of Paragraph 39.**

40.    The Board, and by its agents and employees, did not subject similarly situated

male BSWs to similar unlawful employment practices.

**ANSWER:    Defendant denies the allegations of Paragraph 40.**

41.     The Board, and by its agents and employees, did subject similarly situated female BSWs to unlawful employment practices.

**ANSWER:        Defendant denies the allegations of Paragraph 41.**

42.     The Board, and by its agents and employees, subjected Pettigrew to sex-based comments including referring to Pettigrew as "chocolate gal," "Aunt Jemima," and "dumb bitch."

**ANSWER:        Defendant denies the allegations of Paragraph 42.**

43.     Further, the Board has failed to take appropriate actions to deal with complaints of discriminatory conduct by the Board and its agents and employees, specifically regarding complaints of sex discrimination and hostile work environments based upon sex.

**ANSWER:        Defendant denies the allegations of Paragraph 43.**

44.     The Board violated Title VII by subjecting Pettigrew to unlawful employment practices, including termination, because of her sex and due to reporting discrimination.

**ANSWER:        Defendant denies the allegations of Paragraph 44.**

45.     As a direct and proximate result of the Board's violation of Title VII, Pettigrew did incur and continues to incur, damages.

**ANSWER:        Defendant denies the allegations of Paragraph 45.**

WHEREFORE, the Defendant, THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, prays that judgment be entered in its favor and against the Plaintiff, NANCY C. PETTIGREW, and that Defendant recover its costs of suit.

DEFENDANT DEMANDS A TRIAL BY JURY.

**COUNT II-UNLAWFUL DISCRIMINATION IN VIOLATION OF THE ILLINOIS**
**CIVIL RIGHTS ACT OF 2003**
**Against The Board of Trustees of the University of Illinois and Michael Jamison in His**
**Official Capacity**

46.      Pettigrew re-alleges paragraphs 1-45 of this Complaint as if fully set forth herein.

**ANSWER:      Defendants repeat and reassert their answers to Paragraphs 1 through 46 of**
**Plaintiff's Second Amended Complaint as and for their answers to Paragraph 46.**

47.      The ICRA prohibits discrimination based upon race and sex by units of Illinois

state government.

**ANSWER:      Paragraph 47 is a legal conclusion, and Defendants allow the language of**
**the ICRA to speak for itself.**

48.      The Board violated the ICRA by subjecting Pettigrew to discrimination based

upon her race and sex.

**ANSWER:      Defendants deny the allegations of Paragraph 48.**

49.      As a direct and proximate result of the Board's violation of the ICRA, Pettigrew

did incur and continues to incur, damages.

**ANSWER:      Defendants deny the allegations of Paragraph 49.**

WHEREFORE, the Defendants, THE BOARD OF TRUSTEES OF THE UNIVERSITY OF

ILLINOIS and MICHAEL JAMISON, pray that judgment be entered in their favor and against the

Plaintiff, NANCY C. PETTIGREW, and that Defendants recover their costs of suit.

DEFENDANTS DEMAND A TRIAL BY JURY.

**COUNT III- UNLAWFUL INTERFERENCE WITH PLAINTIFF'S ABILITY TO CONTRACT, DISPARATE TREATMENT, AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1981 AS APPLIED VIA U.S.C. § 1983.**
**Against Michael Jamison Individually**

50.     Pettigrew re-alleges paragraphs 1-50 of this Complaint as if fully set forth herein.

**ANSWER:     Defendant repeats and reasserts his answers to Paragraphs 1 through 50 of Plaintiff's Second Amended Complaint as and for his answer to Paragraph 50.**

51.     The Equal Protection Clause of the United States Constitution and 42 U.S.C § 1981 prohibit a hostile work environment, disparate treatment, and interference with an individual's ability to make and enforce contracts on the basis of race and sex.

**ANSWER:     Paragraph 51 is a legal conclusion, and Defendant allows the language of the United States Constitution and 42 U.S.C. § 1981 to speak for themselves.**

52.     Pettigrew, a member of Service Employees International Union Local No. 73 Chapter 119, was party to a contract between the Board and the Union which governed the terms and conditions of Pettigrew's employment.

**ANSWER:     Defendant denies the allegations of Paragraph 52.**

53.     On information and belief, at all times relevant, Jamison was employed by the Board as a Building Services Foreman.

**ANSWER:     Defendant admits the allegations of Paragraph 53.**

54.     Jamison had direct supervisory responsibilities over Pettigrew, including the ability to recommend disciplinary actions, participate in decisions involving disciplinary actions, recommend termination, and recommend modification of the terms and conditions of Pettigrew's employment.

**ANSWER:     Defendant admits that Jamison had direct supervisory responsibilities over Plaintiff at certain times. Defendant denies the remaining allegations of Paragraph 54.**

55.     Jamison interfered with Pettigrew's ability to enforce the terms of her Union contract by subjecting Pettigrew to multiple adverse employment actions, including but not limited to: termination, disciplinary proceedings, administrative leave, changes in privileges of employment, and a hostile work environment.

**ANSWER:     Defendant denies the allegations of Paragraph 55.**

56.     Jamison did not interfere with the ability of other similarly situated Caucasian and male BSWs to enforce the terms of their Union Contracts by subjecting them to similar adverse employment actions, despite the fact Caucasian and male BSWs engaged in conduct substantially similar to Pettigrew.

**ANSWER:     Defendant admits that Jamison did not interfere with anyone's ability to enforce a contract, and otherwise denies the allegations of Paragraph 56.**

57.     Jamison did interfere with the ability of similarly situated African-American and female BSWs to enforce the terms of their Union contracts by subjecting them to adverse employment actions.

**ANSWER:     Defendant denies the allegations of Paragraph 57.**

58.     Jamison did not subject similarly situated Caucasian and male BSWs to similar adverse employment actions, despite the fact Caucasian and male BSWs engaged in conduct substantially similar to Pettigrew.

**ANSWER:     Defendant denies the allegations of Paragraph 58.**

59.     Jamison did subject similarly situated African-American and female BSWs to adverse employment.

**ANSWER:     Defendant denies the allegations of Paragraph 59.**

60.     Jamison created a hostile work environment.

**ANSWER:       Defendant denies the allegations of Paragraph 60.**

62.     Jamison treated African-American and female BSWs differently than Caucasian and male BSWs.

**ANSWER:       Defendant denies the allegations of Paragraph 62.**

63.     Jamison interfered with the terms of Pettigrew's Union contract by subjecting Pettigrew to adverse employment actions, including termination, because of her race and sex.

**ANSWER:       Defendant denies the allegations of Paragraph 63.**

64.     At all times relevant, Jamison was acting in the course and scope of his employment.

**ANSWER:       Defendant admits the allegations of Paragraph 64.**

65.     At all times relevant, Jamison was acting under the color of law.

**ANSWER:       Paragraph 65 is a legal conclusion, which does not require an answer at this time. To the extent that an answer is required, Defendant denies the allegations of Paragraph 65.**

66.     As a direct and proximate result of Jamison's violation of Pettigrew's rights, Pettigrew did incur and continues to incur, damages.

**ANSWER:       Defendant denies the allegations of Paragraph 66.**

WHEREFORE, the Defendant, MICHAEL JAMISON, prays that judgment be entered in his favor and against the Plaintiff, NANCY C. PETTIGREW, and that Defendant recover his costs of suit.

DEFENDANT DEMANDS A TRIAL BY JURY.

## **AFFIRMATIVE DEFENSES**

NOW COME the Defendants, THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS and MICHAEL JAMISON, by Brian M. Smith of Heyl, Royster, Voelker & Allen, their attorneys, and for their Affirmative Defenses to the Plaintiff's Second Amended Complaint, state as follows:

1.      Defendants' actions were taken for legitimate, non-discriminatory, and non-retaliatory reasons.

2.      Defendants engaged in good faith and made good faith efforts to comply with all applicable law.

3.      Defendants reserve the right to add additional defenses available under the law should additional information be discovered.

4.      Plaintiff's claims are barred to the extent she has failed to exhaust her administrative remedies.

5.      Defendant Jamison is entitled to qualified immunity and good faith immunity for all actions taken.

6.      Plaintiff has failed to mitigate her damages.

Respectfully submitted,

THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS and MICHAEL JAMISON, Defendants

BY: /s/Brian M. Smith
Brian M. Smith
ARDC #: 6293822
HEYL, ROYSTER, VOELKER & ALLEN
Suite 505, 301 N. Neil Street
Champaign, IL 61820
Telephone  217.344.0060
Email:  bsmith@heylroyster.com

**PROOF OF SERVICE**

       I hereby certify that on October 17, 2019, I electronically filed the foregoing **ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT**, with the Clerk of the Court using the CM/ECF system, which will send notification to:

Mr. James M. Kelly
Mr. Jason W. Jording
James Kelly Law Firm
7817 N. Knoxville Avenue
Peoria, IL 61614

       I also hereby certify that I have mailed, by United States Postal Service, the foregoing to the following non-CM/ECF participant:

       None.

                                  s/Brian M. Smith
                                  Heyl, Royster, Voelker & Allen

37044852_1